IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RENITA CHALEPAH, as                      )
PERSONAL REPRESENTATIVE of the           )     CASE NO: _____
ESTATE OF ZACHARY NICHOLAS               )
BEAR HEELS for the benefit of the Heirs  )
and Next of Kin and as PERSONAL          )
REPRESENTATIVE OF THE ESTATE             )
OF ZACHARY NICHOLAS                      )
BEAR HEELS, Deceased,                    )
                                         )
          Plaintiff                      )
                                         )
     v.                                  )     **COMPLAINT AND**
                                         )     **JURY DEMAND**
THE CITY OF OMAHA, a                      )
Municipal Corporation;                   )
SCOTTY PAYNE, in his individual          )
and official capacity; RYAN              )
MCCLARTY, in his individual and          )
official capacity; JENNIFER STRUDL,      )
in her individual and official capacity; )
MAKYLA MEAD, in her individual           )
and official capacity; and SGT. ERIK     )
FOREHEAD, in his individual and          )
official capacity.                       )
                                         )
          Defendants.                    )

The Plaintiff, Renita Chalepah, as personal representative of the estate of the Decedent

Zachary Nicholas Bear Heels ("Bear Heels") and on behalf of the Decedent's heirs and next of

kin, states and alleges as follows:

**I.**

**JURISDICTION AND VENUE**

1.     This civil action arises under 42 U.S.C. § 12132 and under 42 U.S.C. § 1983.

Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The unlawful acts and

1

practices alleged herein occurred in the City of Omaha, Douglas County, Nebraska, which is within this judicial district. Plaintiff brings this action under 42 U.S.C. § 1983 for violation of Bear Heels' rights under the Fourth and Fourteenth amendments to the Constitution of the United States. Plaintiff also brings this action under Title two of the Americans with Disabilities Act. 42 U.S.C. § 12132.

## II.

## PARTIES

2.      Plaintiff, Renita Chalepah, is the personal representative of the estate of the Decedent Bear Heels. Renita Chalepah is the mother of Bear Heels. At the time of the events described in this Complaint, both Bear Heels and the Plaintiff resided in Mountain View, Kiowa County, Oklahoma. Plaintiff brings this action both as a survival action on behalf of Bear Heels' estate and as a wrongful death action on behalf of Bear Heels' next of kin as authorized by Nebraska law. Neb. Rev. Stat. Ann. § 25-1401; Neb. Rev. Stat. Ann. § 30-809; Neb. Rev. Stat. Ann. § 30-810; *Corona de Camargo v. Schon*, 278 Neb. 1045, 1047, 776 N.W.2d 1, 5 (2009). Bear Heels is survived by his mother Renita Chalepah and four younger brothers; all of whom have been deprived of his care, comfort, and companionship.

3.      Defendant City of Omaha ("City") is a city of the metropolitan class and is a political subdivision of the state of Nebraska. Neb. Rev. Stat. Ann. § 14-101. At all times relevant to this action the City was acting under color of state law.

4.      Defendants Scotty Payne, Ryan McClarty,  Jennifer Strudl, Makyla Mead, and Erik Forehead (Collectively "Individual Defendants") were employed by the City as a police officers with the Omaha Police Department ("Department") at all relevant times. The Individual

Defendants are named in both their individual and official capacities. At all times relevant to this action the Individual Defendants were Omaha Police Officers acting under color of state law.

### III.

### GENERAL ALLEGATIONS

5.    Bear Heels was a native of Oklahoma, born to Renita Chalepah (Plaintiff), a Kiowa Indian mother, and Brent Bear Heels, a Rosebud Sioux Indian in Sioux City, South Dakota, on October 29, 1987. Bear Heels lived with his mother in Oklahoma for most of his life. Bear Heels was first diagnosed with mental illness in approximately 2006 by mental health service providers in Lawton, Oklahoma, after being taken to the Lawton Indian Hospital in response to an acute mental health crisis. Bear Heels was initially diagnosed with schizoaffective disorder. After additional observation and treatment, Bear Heels was diagnosed with Bipolar disorder and the diagnosis of Schizoaffective Disorder was reaffirmed. Bear Heels  was prescribed anti-psychotic medications to control the symptoms of his diagnosed mental illnesses. At all relevant times, each of the Individual Defendants were aware that Bear Heels suffered from mental illness and was experiencing an acute psychotic episode.

6.    On Saturday, June 3, 2017, Bear Heels was traveling by bus from Murdo, South Dakota to Oklahoma City on his way home. The bus arrived in Omaha at the city bus station located at 16th and Jackson Street at 11:35 p.m. Due to Bear Heels' conduct on the bus and a complaint from another passenger, Bear Heels was not allowed to board the next bus for departure to Oklahoma City. Surveillance footage shows Bear Heels leaving the bus station at 11:50 p.m. on June 3.

7.    On Sunday, June 4, 2017, Omaha Police Officers responded to a call at a business

3

located at 6307 Center Street to check the well-being of a man who was licking windows. The

officers located Bear Heels and learned he had recently arrived to Omaha. Officers described

Bear Heels as "talking quietly and [he] appeared to be dehydrated."[1]  Officers gave Bear Heels

some water and offered medical attention or transportation to the local shelter. Bear Heels drank

the water. The officers stated that Bear Heels "appeared to be under the influence of drugs and

mentally ill."  The officers believed they had no lawful reason to detain Bear Heels and he was

allowed to leave the area.

8.      On Monday, June 5, 2017, at approximately 12:36 a.m., Defendants Jennifer

Strudl and Makyla Mead, acting in the course and scope of their employment with the City, were

dispatched to the Bucky's gas station at 60th and Center in response to a call reporting a

disturbance with a party refusing to leave.

9.      Jennifer Strudl arrived at Bucky's first and observed a male, later identified as

Bear Heels, dancing in front of the store. Officer James Mosby was in the area and also stopped

to assist.

10.     At 12:40 a.m., Jennifer Strudl and James Mosby made contact with Bear Heels

and "attempted to obtain his identification and his reason for being at Bucky's."  During this

encounter, "Bear Heels' speech was garbled and he displayed signs of impairment."

11.     When officers asked for identification, Bear Heels raised his hands to his head and

stepped towards Jennifer Strudl, at which time Jennifer Strudl and James Mosby placed him in

---

[1]  Plaintiff relies, in part, upon the *In-Custody Death Time Line* constructed by the Omaha Police
Department as part and parcel of its In-Custody Death Investigation of Bear Heels' in-custody death on
June 5, 2017. All quotations included in the Factual Background portion of this Complaint pleading were
taken from the text of this written report which was released to the public by the Omaha Police
Department.

handcuffs without incident.

12.     Shortly thereafter, at 12:43 a.m., Makyla Mead arrived while Jennifer Strudl and James Mosby were still trying to determine Bear Heels' name and address. At 12:51 a.m., James Mosby left the call to assist officers at another location.

13.     At 12:54 a.m. Makyla Mead and Jennifer Strudl placed Bear Heels into the back seat of Jennifer Strudl's police cruiser while they determined how to proceed. As they put Bear Heels into the back seat they told him they would take him to where he wanted to go.

14.     Bear Heels remained handcuffed in Jennifer Strudl's cruiser for thirty-six (36) minutes, until 1:30 a.m.

15.     Makyla Mead and Jennifer Strudl were able to identify Bear Heels after a record check indicated that he was reported missing by his mother Renita Chalepah in the evening hours of June 4, 2017.

16.     During this encounter, Jennifer Strudl consulted with Sergeant Erik Forehead to determine what course of action to take. Erik Forehead determined there was insufficient justification to arrest Bear Heels or place him in emergency protective custody.

17.     Sergeant Erik Forehead's decision was based, in part, on his belief that Bear Heels did not meet the standards for protective custody contained in the Nebraska Mental Health Commitment Act, found at  Neb. Rev. Stat. §71-902 *et seq.,* which provides guidelines for the emergency mental health care and treatment for people who are "mentally ill and dangerous."

18.     Pursuant to the express terms of the Nebraska Mental Health Commitment Act, the "person must present a substantial risk of *serious harm to another person* within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others

5

in reasonable fear of such harm." (Emphasis added) Alternatively, a person who presents a

"*substantial risk of serious harm to himself* within the near future as manifested by evidence of

recent attempts at threats of, suicide or serious bodily harm *or evidence of inability to provide for*

*his basic human needs*, including food, clothing, shelter, essential medical care, or personal

safety."  Neb. Rev. Stat. §71-908 (2004). (Emphasis added).

19.     At 1:03 a.m. on June 5, 2017, Jennifer Strudl called Bear Heels' mother, Renita

Chalepah (Plaintiff), to discuss options for Bear Heels.

20.     Jennifer Strudl permitted Bear Heels to talk to his mother, but his speech was

mostly unintelligible during their conversation. During the phone call, Renita Chalepah explained

she was doing all she could to get Bear Heels home so she could get him some help and take care

of him.

21.     Renita Chalepah requested that Jennifer Strudl and Makyla Mead place Bear

Heels in a Crisis Center until she could drive from Oklahoma to Omaha and pick him up.

22.     Makyla Mead contacted Erik Forehead about this request but Erik Forehead

maintained that there was still no justification to hold Bear Heels.

23.     After speaking with Erik Forehead, Jennifer Strudl and Makyla Mead told Renita

Chalepah that Bear Heels would be taken to the bus station.

24.      At 1:27 a.m. on June 5, 2017, Scotty Payne arrived at the scene. Jennifer Strudl

informed Scotty Payne that she was taking Bear Heels to the bus station. At 1:30 a.m., Jennifer

Strudl opened the cruiser door to put the seat belt on Bear Heels at which time  he got out of the

cruiser, still handcuffed.

25.     Even though Erik Forehead determined there was no legal basis to arrest or

6

detain Bear Heels, Jennifer Strudl, Makyla Mead and Scotty Payne pursued Bear Heels and tried to get him back into the police cruiser.

26.     When Jennifer Strudl, Makyla Mead and Scotty Payne could not get Bear Heels back into the cruiser, they instead pinned him up against an outdoor display of bottled water.

27.     At 1:35 a.m., Ryan McClarty arrived and Ryan McClarty joined the effort to unlawfully detain Bear Heels who was still in handcuffs with his arms behind his back.

28.     A struggle followed when Ryan McClarty pulled Bear Heels to the ground and held him down while, without provocation, Scotty Payne warned Bear Heels he would be tased if he did not cooperate with his unlawful detention.

29.     Jennifer Strudl, Makyla Mead, Scotty Payne and Ryan McClarty held Bear Heel's arms and legs and took him back toward Jennifer Strudl's cruiser.

30.     However, Bear Heels broke free from the hold and landed on his feet, at which time, Scotty Payne announced "Taser, Taser."

31.     After another warning, Ryan McClarty grabbed Bear Heels and Scotty Payne discharged his electronic controlled device (ECD), commonly known as a Taser.

32.     The Taser probes struck Bear Heels in his abdomen and right thigh.

33.     Ryan McClarty again assaulted Bear Heels by pulling him to the ground. Ryan McClarty then grabbed Bear Heels by his ponytail and waistband and began to drag Bear Heels to the cruiser.

34.     Makyla Mead grabbed Bear Heels arm to assist Ryan McClarty.

35.     During Ryan McClarty's attack upon Bear Heels, the Taser probes were still embedded in Bear Heels abdomen and right thigh.

36.    Scotty Payne continued to activate the Taser approximately six more times.

37.    Scotty Payne, Ryan McClarty, Jennifer Strudl and Makyla Mead placed Bear Heels on the ground in a seated position with his back against the rear tire of the cruiser while the right rear passenger door was open which allowed the interior cruiser camera to capture video and audio of the assault and battery immediately preceding the death of Bear Heels.

38.    For the next 1 minute and 45 seconds, Bear Heels sat on the ground with his legs out in front of him and offered no resistance. During this time, Scotty Payne activated the Taser three more times.

39.    After the Taser completed the ten, five second cycles, Scotty Payne stepped toward Bear Heels and, while standing over him said, "You're gonna get it again," despite the fact that Bear Heels was not resisting the officers and posed absolutely no threat to the officers.

40.    Scotty Payne's repeated and unwarranted use of the Taser "were egregious violations of the Omaha Police Department's policies and procedures and training" protocol governing the use of a Taser. The Taser discharges caused Bear Heels' body temperature to rise well above normal, approximately 30 minutes after the Taser discharges Bear Heels' body temperature was measured at 102° Fahrenheit.

41.    At 1:40 a.m., Bear Heels pulled his left hand out of the handcuffs and turned toward Ryan McClarty.  Bear Heels swung his arms and kicked his legs at Ryan McClarty while he was still on the ground.

42.    Ryan McClarty responded by top mounting Bear Heels and delivering thirteen (13) fist strikes to his head and attempted a neck restraint.

43.    While Ryan McClarty was on top of Bear Heels striking him, Scotty Payne again

8

activated his Taser.

44.     At 1:42 a.m. on June 5, 2017, Scotty Payne radioed for a rescue squad.  While Scotty Payne, Ryan McClarty, Jennifer Strudl and Makyla Mead waited for assistance, they continued to pin Bear Heels down on the ground and rendered no emergency medical assistance.

45.     Thirty-nine (39) minutes before the call for a rescue squad, Sergeant Erik Forehead had told Jennifer Strudl and Makyla Mead they had no justification to hold or detain Bear Heels who sat handcuffed in the back of a police cruiser.

46.     At 1:45 a.m., Erik Forehead arrived on the scene and helped secure the handcuffs on Bear Heels and placed flex cuffs on Bear Heels' legs to prevent him from kicking officers.

47.     At 1:49 a.m. on June 5, 2017, Omaha Fire and Rescue arrived and Bear Heels was placed on a gurney.  By the time Bear Heels was placed in the rescue unit, he had stopped breathing and had no pulse.

48.     At 2:02 a.m., Bear Heels was transported to Nebraska Medicine and upon arrival at the Hospital, he was still not breathing and he had no pulse.

49.     At 2:16 a.m., on June 5, 2017, Bear Heels was pronounced dead.

50.     Bear Heels died at 28 years of age at the hands of Scotty Payne, Ryan McClarty, Jennifer Strudl and Makyla Mead, while experiencing an acute, emergent mental health crisis.

51.     Bear Heels committed no crime on June 4 or 5, 2017, and despite Sergeant Erik Forehead's clear direction to release Bear Heels, Scotty Payne, Ryan McClarty, Jennifer Strudl, and Makyla Mead continued to unlawfully detain him.

52.     Scotty Payne and Ryan McClarty assaulted and killed Bear Heels.

9

53.     Scotty Payne and Ryan McClarty were both terminated by the Omaha Police Department and both now face criminal charges related to the assault and battery and death of Bear Heels.

54.     Jennifer Strudl and Makyla Mead were also terminated by the Omaha Police Department but currently face no criminal charges.

55.     In the days following the death of Bear Heels, the Omaha Police Department undertook an investigation of his in-custody death. On Monday June 5, 2017, the City published an *In-Custody Death Investigation Release* that provided a specific time line of the events leading up to the death of Bear Heels.

56.     The *In-Custody Death Investigation Release* indicates that the City reviewed police cruiser dash camera video and audio, police officer body camera video and audio, and interviewed police officers involved in the death of Bear Heels.

57.     On June 10, 2017, and after, Omaha Police Chief Todd Schmaderer ("Schmaderer") made numerous public statements regarding the death of Bear Heels. Schmaderer has broadly said that the officers' handling of the encounter was improper. Schmaderer further characterized the handling of the Bear Heels detention, assault and battery, and death as a failure that occurred despite Omaha Police Department training.

58.     As a result of the police misconduct toward Bear Heels, Schmaderer announced he will make several changes regarding the field training of all officers, Taser use involving mentally ill persons, the handling of mentally ill adults, and a plan to train more officers in specialized mental health/crisis intervention protocols.

**IV.**

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983; Fourth Amendment Excessive Force**
**Scotty Payne, Ryan McClarty, Jennifer Strudl, Makyla Mead, and Erik Forehead in their**
**individual capacities**

59.     The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1

through 58 of this Complaint as though fully set forth herein.

60.     Jennifer Strudl and Makyla Mead's unlawful seizure and detention of Bear Heels

on July 5, 2017, for one hundred and five (105) minutes, as more fully described above, was

unjustified and constituted an unreasonable and excessive use of force without lawful cause in

violation of the Fourth Amendment of the United States Constitution.

61.     Jennifer Strudl and Makyla Mead's decision to handcuff Bear Heels during the

entire time of his unlawful seizure and detention, as more fully described above, was unjustified

and constituted an unreasonable and excessive use of force without lawful cause in violation of

the Fourth Amendment of the United States Constitution. The restraint of individuals

experiencing a psychotic episode for an extended period violates Omaha Police Department

policies, national police standards, and is generally considered counterproductive by mental

health and law enforcement professionals. Jennifer Strudl and McKayla Mead's detention of

Bear Heels in a police cruiser also violated the Fourth Amendment and represents a seizure of his

person.

62.     Jennifer Strudl and Makyla Mead's refusal and failure to release Bear Heels from

the unlawful detention and handcuff restraints after Erik Forehead's direction to release Bear

Heels from his unlawful detention, as more fully described above, was unjustified and constituted

11

an unreasonable and excessive use of force without lawful cause in violation of the Fourth Amendment of the United States Constitution.

63.     Jennifer Strudl and Makyla Mead's intentionally placed Bear Heels in handcuffs and detained him in a police cruiser for an extended period of time as more fully described above.

64.     The extended detention and the unnecessary use of handcuffs exacerbated Bear Heels' psychotic episode and left him in a distressed state. The extended use of handcuffs and the detention in a police car both constitute the unjustified use of force. Bear Heels had not committed a crime, posed no threat to the safety of the Defendants or others, was unarmed, was held for over an hour and a half, and was surrounded by as many as four Omaha Police Officers. The unlawful detention of Bear Heels, the extended duration of the detention, and the conditions of the detention also exacerbated Bear Heels' psychotic episode and created severe and unnecessary emotional distress.

65.     Scotty Payne's repeated assault and battery of Bear Heels, while handcuffed, with the use of a Taser on twelve (12) separate and distinct occasions in a five minute time frame, as more fully described above, was unjustified and constituted an unreasonable, unnecessary, and excessive use of deadly force under the Constitution of the United States. With the exception of Eric Forehead, each of the Individual Defendants witnessed this clearly excessive use of force but failed to intervene and prevent Scotty Payne from using excessive force against Bear Heels.

66.     Ryan McClarty's assault and battery of Bear Heels, while handcuffed and with Taser probes in his abdomen and right thigh, as more fully described above, was unjustified and constituted an unreasonable, unnecessary, and excessive use of deadly force under the

12

Constitution of the United States. With the exception of Eric Forehead, each of the Individual

Defendants witnessed this clearly excessive use of force but failed to intervene and prevent

Scotty Payne from using excessive force against Bear Heels.

67.     The repeated blows to the head of Bear Heels inflicted by Ryan McClarty and

Scotty Payne's 12 separate uses of the Taser upon Bear Heels constitute the use of deadly and

excessive force against Bear Heels. The deadly force was not necessary to prevent Bear Heels'

escape. Ryan McClarty and Scotty Payne also did not have probable cause to believe that Bear

Heels posed a significant threat of serious physical injury to the Individual Defendants or others.

Based upon the above described actions, the Plaintiff contends that Ryan McClarty and Scotty

Payne entered into a conspiracy to violate Bear Heels' constitutionally guaranteed rights.

68.     Erik Forehead exercised excessive force against Bear Heels by failing to

supervise, correct, or stop the actions of the other Individual Defendants. Eric Forehead also

exercised excessive force against Bear Heels by ordering and/or knowingly permitting the

conduct outlined above. Based upon the facts outlined above, the Plaintiff alleges that Erik

Forehead, through his communications with the other Individual Defendants, knew about the

extended unlawful detention of Bear Heels and knew about the excessive use of force against

Bear Heels, Erik Forehead failed to intervene to prevent the above described excessive uses of

force against Bear Heels.

69.     At all times relevant to this complaint, the Individual Defendants were acting

within the scope of their employment with the Omaha Police Department. Upon information and

belief, at all times relevant to this complaint the Individual Defendants were on duty as Omaha

Police Officers, were in uniform, and were transported by marked Omaha Police Department

13

vehicles. At all times relevant to this complaint the Individual Defendants were acting under color of state law.

## V.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983; Fourth Amendment Unlawful Seizure/Detention**
**Scotty Payne, Ryan McClarty, Jennifer Strudl, Makyla Mead, and Erik Forehead in their**
**individual capacities**

70.     The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.     By engaging in the conduct more fully described above, including but not limited to, handcuffing Bear Heels, placing Bear Heels in a police car, and restraining Bear Heels through the use of a Taser and other physical force, the individual defendants unlawfully seized Bear Heels.

72.     The seizure of Bear Heels person constitutes an arrest.

73.     Bear Heels was held unlawfully by the Individual Defendants for over 100 minutes.

74.     The Individual Defendants, especially Jennifer Strudl and Makyla Mead, unreasonably delayed the seizure of Bear Heels person.

75.     Scotty Payne and Ryan McClarty used deadly force to take Bear Heels into custody.

76.     Bear Heels did not commit any crime and there was no lawful basis for his detention.

77.     As described above, Erik Forehead informed Jennifer Strudl and Makyla Mead

14

that there was no lawful basis to detain Bear Heels and instructed them to release him.

78.     Erik Forehead unlawfully detained Bear Heels by failing to supervise, correct, or

stop the actions of the other Individual Defendants. Eric Forehead also unlawfully detained Bear

Heels by ordering and/or knowingly permitting the conduct outlined above.

79.     At all times relevant to this complaint, the Individual Defendants were acting

within the scope of their employment with the Omaha Police Department. Upon information and

belief, at all times relevant to this complaint the Individual Defendants were on duty as Omaha

Police Officers, were in uniform, and were transported by marked Omaha Police Department

vehicles. At all times relevant to this complaint the Individual Defendants were acting under

color of state law.

## VI.

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983; Fourteenth Amendment, Unlawful Denial of Medical Care
Scotty Payne, Ryan McClarty,  Jennifer Strudl, Makyla Mead, and Erik Forehead in their
individual capacities**

80.     The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1

through 79 of this Complaint as though fully set forth herein.

81.     Jennifer Strudl, Makyla Mead, Erik Forehead, Scotty Payne and Ryan McClarty

knew that Bear Heels was suffering from an acute psychotic episode which impeded his ability to

provide for his basic needs, an objectively serious medical need, and required mental health

evaluation and treatment.

82.     Upon witnessing the repeated use of a Taser upon Bear Heels and witnessing

repeated and violent blows to Bear Heels head the Individual Defendants failed to administer

emergency first aid including checking if Bear Heels was breathing and administering CPR.

83.     The Individual Defendants failed to administer emergency first aid or obtain emergency medical care for Bear Heels for an unreasonably long period of time despite witnessing severe attacks upon Bear Heels. The Individual Defendants also witnessed Bear Heels in an unresponsive state after the attacks upon his person. These conditions and the facts described above clearly show that Bear Heels was suffering from an objectively serious medical need.

84.     Jennifer Strudl, Makyla Mead, Erik Forehead, Scotty Payne and Ryan McClarty knew that Bear Heels required mental health treatment and, after the unlawful assaults upon Bear Heels, that he required emergency medical care, but failed to provide or obtain necessary mental health treatment and necessary emergency first aid.

85.     The failure of Jennifer Strudl, Makyla Mead, Erik Forehead, Scotty Payne and Ryan McClarty to place Bear Heels' into protective custody upon discovering that he was experiencing a psychotic episode or otherwise transport him to a medical facility for mental health treatment violated Bear Heels right medical care under the Fourteenth Amendment.

86.     As more fully described above, the individual defendants failed to attend to Bear Heels' acute mental psychosis and diagnosed mental illnesses thereby demonstrating deliberate indifference to Bear Heels' obvious and emergent need for medical care and treatment.

87.     The failure of the Individual Defendants to obtain medical treatment for Bear Heels caused severe physical injuries and mental distress. The failure of the Individual Defendants to provide or obtain emergency medical treatment to Bear Heels after he stopped breathing also caused his death.

16

88.     Erik Forehead unlawfully denied medical care to Bear Heels by failing to supervise, correct, or stop the actions of the other Individual Defendants. Eric Forehead also unlawfully denied medical care to Bear Heels by ordering and/or knowingly permitting the conduct outlined above. Erik Forehead specifically denied the request of Jennifer Strudl and/or Makyla Mead to take Bear Heels into protective custody because they believed that he posed a threat to himself based on his psychotic episode.

89.     At all times relevant to this complaint, the Individual Defendants were acting within the scope of their employment with the Omaha Police Department. Upon information and belief, at all times relevant to this complaint the Individual Defendants were on duty as Omaha Police Officers, were in uniform, and were transported by marked Omaha Police Department vehicles. At all times relevant to this complaint the Individual Defendants were acting under color of state law.

**VII.**

**FOURTH CAUSE OF ACTION**

**42 U.S.C. § 12132 ; Disability Discrimination in Violation of the Americans With Disabilities Act**
**Scotty Payne, Ryan McClarty,  Jennifer Strudl, Makyla Mead, and Erik Forehead in their individual capacities**

**A.      Wrongful arrest/incarceration/assault**

90.     The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91.     Bear Heels, prior to his death, was an individual with a disability under the Americans with Disabilities Act because his mental health conditions (as more fully described

17

above) inhibited his ability to think clearly.

92.    Bear Heel's disability was the motivating factor in the continued and unlawful detention of Bear Heels by Scotty Payne, Ryan McClarty,  Jennifer Strudl, and Makyla Mead. Bear Heel's disability was also the motivating factor in the unlawful use of force (more fully described above) against Bear Heels by Scotty Payne, Ryan McClarty,  Jennifer Strudl, and Makyla Mead.

93.    Bear Heels' disability was also the motivating factor in Erik Forehead's failure to order that Bear Heels be provided with mental health treatment.

94.    The intentional discrimination of the individual defendants against Bear Heels on the basis of his disability caused the Plaintiff's damages more fully described below.

**B.     Failure to Accommodate**

95.    Bear Heels, prior to his death, was an individual with a disability under the Americans with Disabilities Act because his mental health conditions (as more fully described above) inhibited his ability to think clearly.

96.    As more fully described above, the Individual Defendants were aware of Bear Heels was suffering from an acute psychotic episode and required mental health treatment and other reasonable accommodations.

97.    Taking Bear Heels into immediate protective custody and obtaining immediate mental health treatment would have been a reasonable accommodation under the circumstances.

98.    Releasing Bear Heels, or never taking him into custody, would have been a reasonable accommodation under the circumstances.

99.    Using crisis intervention procedures in accordance with Omaha Police

Department procedures and/or national police standards would have been a reasonable accommodation under the circumstances.

100.    Avoiding escalation of the situation with Bear Heels and/or declining to exercise unreasonable force against Bear Heels as outlined above would have been a reasonable accommodation under the circumstances.

101.    Erik Forehead unlawfully denied reasonable accommodations to Bear Heels by failing to supervise, correct, or stop the actions of the other Individual Defendants. Eric Forehead also unlawfully denied reasonable accommodations to Bear Heels by ordering and/or knowingly permitting the conduct outlined above. Erik Forehead specifically denied the request of Jennifer Strudl and/or Makyla Mead to take Bear Heels into protective custody because they believed that he posed a threat to himself based on his psychotic episode.

102.    The denial of reasonable accommodation to Bear Heels had the effect of denying Bear Heels the benefit of emergency services and Omaha Police protection.

103.    The denial of reasonable accommodation to Bear Heels caused the Plaintiff's damages which are more fully described below.

## VIII.

### FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983; Fourth Amendment Excessive Force**
**The City of Omaha**

104.    The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105.    The City of Omaha enacted policies which violated Bear Heels' right to be free

19

from excessive force under the Fourth Amendment.

106. Based on relevant law and national police standards, the City of Omaha's policies facially violate Bear Heels' right to be free from the excessive use of force, such policies include:

     a.     Omaha Police policies regarding the use of Tasers.

     b.     Omaha Police Policies regarding the use of handcuffs and other forms of detention against individuals experiencing psychotic episodes.

     c.     Omaha Police Policies regarding the use of potentially deadly physical force to restrain suspects.

     d.     Omaha Police Policies regarding the use of force against psychotic individuals.

107. The City of Omaha was deliberately indifferent to the likelihood that excessive force would be used against individuals with mental disabilities based on the failure to properly supervise and train Omaha Police Officers.

108. Use of Tasers and encounters with individuals experiencing psychotic episodes are routine for Omaha Police officers. The City was at all times on notice that these encounters presented a high risk of violating the rights of individuals in Omaha, especially mentally ill individuals.

109. City knew or should have known that on April 26, 2016, Defendant Ryan McClarty had been charged in the County Court of Douglas County, Case Number CR-16-9119, with *CARETAKER NEGLECT* for leaving a child or children under the age of seven and/or eight unattended thereby calling Ryan McClarty's maturity and fitness to be a law enforcement officer into question.

20

110.    City knew or should have known that Ryan McClarty had filed a *Petition and Affidavit to Obtain Harassment Protection Order* on January 27, 2016, in the District Court of Douglas County, which detailed some sort of feud between Ryan McClarty and another man thereby calling Ryan McClarty's maturity and fitness to be a law enforcement officer into question.

111.    Hiring, and or failing to properly supervise and/or train Ryan McClarty created a likely risk that Ryan McClarty would violate the rights of individuals in Omaha based on his violent tendencies.

112.    City failed to properly supervise the individual defendants, especially through the conduct of Sergeant Erik Forehead.

113.    City failed to train law enforcement officers regarding the proper use of the Taser, specifically, the City allows Tasers to be deployed multiple times against a suspect and allows Tasers to be deployed without taking prompt medical precautions such as calling an ambulance immediately upon use of a Taser. City failed to train law enforcement officers that the deployment of twelve (12), five-second rounds of a Taser in a five minute period of time is excessive, deadly force and would likely result in the extreme suffering and death; especially in the case of acutely psychotic individuals who are at an enhanced risk of cardiac arrest from Taser use.

114.    City failed to train the individual defendants to de-escalate situations involving individuals experiencing psychotic episodes.

115.    City failed to train law enforcement officers to avoid unnecessary uses of detention or force when interacting with acutely psychotic, seriously mentally ill persons.

21

116.    City failed to train law enforcement officers regarding blows to the head and proper medical protocols related to head injuries including concussions.

117.    By failing to train its employees to recognize warning signs and dangers of mental illness in unlawfully detained acutely psychotic and mentally ill persons, and failing to adequately train law enforcement officers about the potentially, or conclusively, fatal effects of deploying twelve Taser cycles delivered over the course of five minutes, City acted with deliberate indifference to known risks of constitutional deprivation to Bear Heels.

118.    As a direct result of City's deliberate indifference to the risk of deprivation of Bear Heels constitutional liberty interests set forth above, Bear Heels and Renita CHALEPAH have incurred damages as set forth below.

119.    The City failed to properly train the Individual Defendants regarding their constitutional duty to intervene when they witness or are aware of fellow Omaha Police Officers' use of excessive force.

120.    At all relevant times, City was acting under color of state law. As more fully described above, the policies of the city violated Bear Heels' right to be free from excessive uses of force.

## IX.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983; Fourth Amendment Unlawful Seizure/Detention
### The City of Omaha

121.    The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 120 of this Complaint as though fully set forth herein.

122.    Upon information and belief, the City enacted policies related to handcuffs, detention, and other restraints which violate the Fourth Amendment on their face and are likely to result in the unlawful seizure of the person.

123.    Upon information and belief, the City enacted polices related to Taser use, Taser use while the suspect is in handcuffs, and mentally ill individuals which violate the Fourth Amendment on their face and are likely to result in an unlawful seizure of the person.

124.    Use of Tasers and encounters with individuals experiencing psychotic episodes are routine for Omaha Police officers. The City was at all times on notice that these encounters presented a high risk of violating the rights of individuals in Omaha, especially mentally ill individuals.

125.    Omaha failed to supervise and train Omaha Police officers regarding the detention of individuals without probable cause, especially in the context of mentally ill individuals. These failures regularly result in detentions of unreasonable length without probable cause, the unnecessary use of confinement such as handcuffs and detention in police vehicles, excessive use of deadly force such as blows to the head and repeated use of Tasers, and the arrest of individuals who did not commit a crime and did not pose a threat to others.

126.    Erik Forehead unlawfully detained Bear Heels by failing to supervise, correct, or stop the actions of the other Individual Defendants. Eric Forehead also unlawfully detained Bear Heels by ordering and/or knowingly permitting the conduct outlined above.

127.    At all times relevant to this complaint, the Individual Defendants were acting within the scope of their employment with the Omaha Police Department. Upon information and belief, at all times relevant to this complaint the Individual Defendants were on duty as Omaha

23

Police Officers, were in uniform, and were transported by marked Omaha Police Department vehicles. At all times relevant to this complaint the Individual Defendants were acting under color of state law.

128.    The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

## X.

### SEVENTH CAUSE OF ACTION

**42 U.S.C. § 1983; Fourteenth Amendment, Unlawful Denial of Medical Care
The City of Omaha**

129.    The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 128 of this Complaint as though fully set forth herein.

130.    City, (including its agents Jennifer Strudl, Makyla Mead, Erik Forehead, Scotty Payne and Ryan McClarty) confined Bear Heels in handcuffs and in a police cruiser for an extended period of time. Due to his unlawful arrest and detention and his acute psychosis and severe mental illness, Bear Heels could not care for his own medical needs while  he was in the Defendants' custody.

131.    The Individual Defendants had knowledge of Bear Heels' need for mental health treatment. The Individual Defendants also had knowledge of Bear Heels' need for emergency first aid and emergency medical care. Erik Forehead who had decision-making/policy-making authority for City, intentionally failed to provide the Plaintiff with treatment for his psychosis and mental illness.

132.    By those failures set forth above, City, Jennifer Strudl, Makyla Mead , Erik

24

Forehead, Scotty Payne and Ryan McClarty, acted with deliberate indifference to a known risk of constitutional deprivation to Bear Heels.

133.    As a result of City's deliberate indifference to the risk of deprivation of Bear Heels' constitutional right to medical care, Plaintiff incurred damages as set forth below.

134.    City had a widespread custom or practice of failing to supervise and tolerating misconduct by employees, including:

        a.     City permitted law enforcement officers to unlawfully detain acutely psychotic and mentally ill persons in spite of clear evidence of acute symptoms warranting emergency protective custody;

        b.     City permitted law enforcement officers to indefinitely handcuff acutely psychotic, mentally ill persons in need of emergency medical treatment;

        c.     City's permission for law enforcement officers to use Tasers and physically assaultive behavior against acutely psychotic, mentally ill persons who are presently disoriented and incapable of taking action in response to police requests.

135.    Bear Heels, because of his disability, could not reasonably have discovered these customs and practices or prevented the violation of his rights.

136.    City had a widespread custom or practice of failing to provide adequate staffing to implement reasonable mental health care and/or crisis intervention for acutely psychotic persons.

137.    Such failures included City's failure to provide adequate staffing, by adequately trained individuals/mental health professionals, to allow for appropriate intervention

25

and/or  observation of medically or mentally ill persons in need of appropriate medical care.

138.    Bear Heels was unable to protect himself, seek mental health treatment, or take action to prevent the Defendants' violations of his rights because he was experiencing mental illness with acute psychotic features.

139.    City failed to train law enforcement officers to identify when a person should be placed in emergency protective custody and to act appropriately upon the identification of acute psychotic symptoms.

140.    City failed to train law enforcement officers regarding constitutional procedures for the detention of individuals experiencing psychotic episodes. As a result of the failure to train the Individual Defendants, Bear Heels was confined in handcuffs and in a police cruiser despite his acute psychosis.

141.    City was and is on notice that its officers regularly encounter mentally ill individuals and individuals in clear need of emergency first aid and emergency treatment. City was and is on notice that Omaha Police Officers regularly fail to provide constitutionally required medical treatment and mental health treatment.

## XI.

### EIGHTH CAUSE OF ACTION

**42 U.S.C. § 12132 ; Disability Discrimination in Violation of the Americans With Disabilities Act
The City of Omaha**

142.    The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 141 of this Complaint as though fully set forth herein.

A.      **Wrongful arrest/incarceration/assault**

143.    Based on the allegations more fully described above, Plaintiff alleges that the City

failed to train, supervise, and/or discipline the Individual Defendants in recognizing symptoms of

disability under title II of the Americans with Disabilities Act.

144.    As described above, City failed to properly train, supervise, and/or discipline the

Individual Defendants with respect to excluding qualified individuals, such as Bear Heels, from

necessary emergency services and mental health services.

145.    City through its policies, and through its agents, discriminated against Bear Heels

on the basis of his disability in violation of the ADA resulting in the death of Bear Heels and

other damages described below.

146.    At the time of the incidents described above, Bear Heels did not pose a threat to

himself or to any other individual including the individual Defendants.

147.    The wrongful arrest of Bear Heels and the wrongful assaults on his person was by

reason of his recognized disability.

B.      **Failure to Accommodate**

148.    Bear Heels, prior to his death, was an individual with a disability under the

Americans with Disabilities Act because his mental health conditions (as more fully described

above) inhibited his ability to think clearly.

149.    As more fully described above, the Individual Defendants were aware that Bear

Heels was suffering from an acute psychotic episode and required mental health treatment and

other reasonable accommodations. City policies (as more fully described above) do not

adequately address the recurring instances of police encounters with individuals experiencing

27

psychotic episodes in violation of the ADA.

150.    The City failed to provide for the needs of Bear Heels by placing him in immediate protective custody and obtaining immediate mental health treatment. Based on the recurring incidents of police encounters with acutely psychotic individuals, a policy requiring such action constitutes a reasonable accommodation.

151.    The City failed to properly train its agents, including the Individual Defendants, and or otherwise enact policies, requiring the release of psychotic individuals who do not pose a danger to themselves or others. Based on the recurring incidents of police encounters with acutely psychotic individuals, a policy requiring such action constitutes a reasonable accommodation.

152.    Using crisis intervention procedures in accordance with Omaha Police Department procedures and/or national police standards and properly training and instructing agents of the City such as the Individual Defendants would have been a reasonable accommodation under the circumstances.

153.    The City failed to properly train its agents, including the Individual Defendants, and/or otherwise enact policies, encouraging the de-escalation of situations involving psychotic individuals who do not pose a danger to themselves or others. Based on the recurring incidents of police encounters with acutely psychotic individuals, a policy requiring such action constitutes a reasonable accommodation.

154.    Erik Forehead, a supervisor for the City,  unlawfully denied reasonable accommodations to Bear Heels by failing to supervise, correct, or stop the actions of the other Individual Defendants. Eric Forehead also unlawfully denied reasonable accommodations to Bear

28

Heels by ordering and/or knowingly permitting the conduct outlined above. Erik Forehead specifically denied the request of Jennifer Strudl and/or Makyla Mead to take Bear Heels into protective custody because they believed that he posed a threat to himself based on his psychotic episode.

155.   The denial of reasonable accommodation to Bear Heels had the effect of denying Bear Heels the benefit of emergency services and Omaha Police protection.

156.   The denial of reasonable accommodation to Bear Heels caused the Plaintiff's damages which are more fully described below.

## XII.

## **DAMAGES**

157.   The Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1 through 156 of this Complaint as though fully set forth herein.

158.   Bear Heels and his estate have suffered damages as a result of the Defendants' unconstitutional use of excessive force; unconstitutional detention of Bear Heels; unconstitutional denial of medical care to Bear Heels; and discrimination against Bear Heels with respect to his arrest and the Defendants' failure to accommodate his disability in violation of the ADA, as more fully described above. As a result of the Defendants' actions, Bear Heels and his estate suffered from severe pain and suffering, embarrassment, funeral expenses, mental distress, and death as more fully described above. The Plaintiff also requests attorney fees as allowed by law 42 U.S.C. § 1988. The funeral expenses include funeral home charges of $6,105.00. Funeral expenses also include cash advances by the funeral home for airfare ($610.00) and for outside charges ($500.00).

159.    The Plaintiff also brings this action against the Defendants on behalf of Bear

Heels' next of kin, including but not limited to Bear Heels' mother Renita Chalepah. Bear Heels'

next of kin have suffered from the loss of the Decedent's support, society, comfort, and

companionship.

160.    In addition to compensatory damages, Plaintiff requests punitive damages against

the Individual Defendants in an amount to be proven at trial for the willful and wanton acts and

omissions of the Individual Defendants, to include violation of Bear Heels' civil liberties as

alleged above. The acts and omissions of Defendants in this case were so culpable in nature that

they constitute reckless indifference and wanton disregard for the law and for the lives and safety

of others, including Bear Heels. The Individual Defendants committed the acts and omissions

alleged herein and subjected Bear Heels to improper treatment that caused Bear Heels to suffer

extreme physical and emotional harm that ultimately resulted in his wrongful death with pain and

distress so severe that no person should be expected to endure it. Punitive damages should be

awarded both to punish the Individual Defendants for their conduct and also to deter others from

similar behavior.

161.    The acts and omissions of Defendants as set forth above have resulted in

the wrongful death of Bear Heels and thus Plaintiff seeks recovery for the following damages:

      A.    General damages in an amount to be proven at trial for Bear Heels'

           extreme physical and mental pain and suffering and death;

      B.    Damages for the violations of Bear Heels rights under the Constitution and

           ADA as more fully described above;

      C.    Damages for the next of kin's loss of Bear Heels' care, comfort, and

companionship including but not limited to the Plaintiff's loss of her son;

D.      Special damages including funeral expenses in the amount of $7,215.00;

E.      Punitive damages against the Individual Defendants;

F.      Attorney's fees; and

G.      The costs of this action and such other and further relief as this Court

        deems equitable and proper.

WHEREFORE, the Plaintiff prays for damages as described above, special damages,

general damages, costs of this actions, lost wages, attorneys' fees pursuant to 42 U.S.C. § 1983,

42 U.S.C. § 1988; and any other relief allowed by law.

> RENITA CHALEPAH, as
> PERSONAL REPRESENTATIVE of the
> ESTATE OF ZACHARY NICHOLAS
> BEAR HEELS for the benefit of the Heirs
> and Next of Kin and as PERSONAL
> REPRESENTATIVE OF THE ESTATE
> OF ZACHARY NICHOLAS
> BEAR HEELS, Deceased,


> BY:     s/Thomas M. White
> _____
> Thomas M. White, #17452
> Amy S. Jorgensen, #23215
> Benjamin N. White, #26123
> WHITE & JORGENSEN
> 3114 St. Mary's Avenue
> Omaha, Nebraska  68105
> (402) 346-5700
>
> and
> s/Garvin A. Isaacs
> _____
> Garvin A. Isaacs (OBA# 4559)
> Debbie Maddox (OBA#13166)
> 1400 N. Shartel Ave.

Oklahoma City, OK 73103
(405) 232-2060 - Telephone
(405) 232-9035 - Facsimile

ATTORNEYS FOR PLAINTIFFS


**DEMAND FOR JURY AND LOCATION OF TRIAL**

The Plaintiffs hereby demand a trial by jury and designate Omaha, Nebraska as the place of trial.


s/ Thomas M. White_____