IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RENITA CHALEPAH, as personal Representative of the Estate of ZACHARY NICHOLAS BEAR HEELS for the benefit of the heirs and next of kin and as personal representative of the Estate of ZACHARY NICOLAS BEAR HEELS, deceased,<br><br>   Plaintiff,<br><br> v.<br><br>THE CITY OF OMAHA, a Municipal Corporation, SCOTTY PAYNE; in his Individual and official capacity, RYAN MCCLARTY, in his individual and official Capacity, JENNIFER STRUDL, in her individual and in his official capacity, MAKAYLA MEAD, in her individual and official capacity, and SGT. ERIK FOREHEAD, in his individual and official capacity,<br><br>   Defendants. | CASE NO: 8:18-cv-381<br><br><br><br><br><br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

COME NOW the Defendants, and respectfully submit their Brief in Support of the Partial Motion to Dismiss they have filed in the above captioned action.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure permit the dismissal of a complaint or portions of a complaint for "lack of subject-matter jurisdiction" and for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1) and (6). While Fed. R. Civ. P. 8(a)(2) only requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d

1

868 (2009). A complaint that only alleges legal conclusions or "a formulaic recitation of the elements of a cause of action" does not meet this threshold standard, "nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678, quoting *Bell Atlantic corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

A complaint must plead enough factual matter that, if taken as true will, "state a claim to relief that is plausible on its face." *Twombly* at 570. If the complaint fails to do so, it will not survive when confronted with a motion to dismiss. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a reviewing court must apply a plausibility standard to the claims alleged in the complaint. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'" *Id.* at 678, quoting *Twombly* at 557. While the Court should accept factual allegations articulated in a complaint when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## ARGUMENT

## I. CLAIMS AGAINST INDIVIDUAL DEFENDANTS IN OFFICIAL CAPACITY MUST BE DISMISSED and ALL CLAIMS AGAINST FOREHEAD SHOULD BE DISMISSED

Plaintiffs have sued Officers Payne, McClarty, Strudl and Mead and Sergeant Forehead in their individual and official capacities. Plaintiff has also sued the City of Omaha.

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman v. Barth,* 152 F.3d 907, 914 (8th Cir. 1998). Official-capacity claims against government officials are the functional equivalent of claims against the municipal entity in question. *See, e.g., Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). To state a plausible claim for relief under § 1983 against an individual defendant, the complaint must allege facts supporting that defendant's "personal involvement or responsibility for the violations." *Ellis v. Norris,* 179 F.3d 1078, 1079 (8th Cir. 1999).

### A. Official capacity

Because the City of Omaha is a named defendant, there is no reason the police officers and Sgt. Forehead need to be sued in their official capacities.

### B. Sgt. Forehead's individual capacity

With regard to Sgt. Forehead, the only allegations against him are that he basically told the officer to release the decedent. Plaintiff alleges that, "During this encounter, Jennifer Strudl consulted with Sergeant Erik Forehead to determine what course of action to take. Erik Forehead determined there was insufficient justification to arrest Bear Heels or place him in emergency protective custody." (Complaint, Doc. #1, ¶ 16). Later, Officer "Mead contacted Erik Forehead about this request [to be placed in a Crisis Center], but Erik Forehead maintained that there was still no justification to hold Bear Heels." (Complaint, Doc. #1, ¶ 22). It is undisputed that Sgt. Forehead did not even appear on the scene until after the alleged force had been exercised; "[a]t

1:45 a.m. Erik Forehead arrived on the scene and helped secure the handcuffs on Bear Heels and placed flex cuffs on Bear Heels' legs to prevent him from kicking officers." (Complaint, Doc. #1, ¶ 46). Moreover, Plaintiff admits that Sgt. Forehead was not present when the alleged force took place; "With the exception of Eric Forehead, each of the Individual Defendants witnessed this clearly excessive use of force…" (Complaint, Doc. #1, ¶ 66)

There are no allegation in Plaintiff's 32-page Complaint that allege Sgt. Forehead engaged in any activity that would rise to the level of a § 1983 violation. There are no allegations that he personally participated in any alleged excess force or other unconstitutional activity. For these reasons, Sgt. Forehead must be dismissed entirely.

## II.

## PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF AGAINST STRUDL AND MEAD REGARDING HANDCUFFING

In her First Cause of Action, the Plaintiff alleges an excessive force claim against Officers Jennifer Strudl and Makyla Mead based upon their "decision to handcuff Bear Heels" (Complaint, Doc. #1, ¶ 61), arguing that the "extended use of handcuffs and the detention in a police car both constitute the unjustified use of force." (Complaint, Doc. #1, ¶ 64). This claim of excessive force against Officers Strudl and Mead is separate and distinct from the Plaintiff's claim of unreasonable seizure, which is disputed but not challenged by the Defendants' Partial Motion to Dismiss.

The Eighth Circuit has stated "[f]or the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Hanig v. Lee*, 415 F.3d 822, 824 (8th

Cir.2005). "Handcuffing inevitably involves some use of force and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir.2011)(internal quotation omitted). "As a general proposition, however, there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." *Id*.

Although the Plaintiff alleges the decedent suffered physical injuries as a result of the force allegedly used by Officers Scotty Payne and Ryan McClarty, the Plaintiff makes no allegation of any physical injury suffered by decedent as a result of being placed in handcuffs. The Plaintiff's excessive force claim against Officers Strudl and Mead in their individual capacities should be dismissed with regard to the First Cause of Action.

### III.

### CLAIMS ARISING UNDER THE ADA

Under Plaintiff's Fourth Cause of Action, she alleges that Defendants violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate her son's mental health disability

> Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' 42 U.S.C. § 12132.

*Bahl v. Cty. of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012) (police officer's failure to provide ASL interpreter to deaf motorist during traffic stop did not violate ADA).

> In the context of arrests, courts have recognized two types of Title II claims: (1) wrongful arrest, where police arrest a suspect based on his disability, not for any criminal activity; and (2) reasonable accommodation, where police properly arrest a suspect but fail to reasonably accommodate his disability during the investigation or arrest,

5

> causing him to suffer greater injury or indignity than other arrestees. *See Gohier v. Enright,* 186 F.3d 1216, 1220-21 (10th Cir.1999); *see also Gorman v. Bartch,* 152 F.3d 907, 912-13 (8th Cir.1998) (holding that a paraplegic arrestee could make out a reasonable accommodation claim under the ADA after being injured in a police van not equipped with wheelchair restraints).

*Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171, 174–75 (4th Cir. 2009). Under labor law, at the heart of a reasonable accommodation, there must be a **request** for such accommodation. See *Ballard v. Rubin,* 284 F.3d 957 (8th Cir. 2002). There is case law from other circuits that indicate that such is or should be the same standard to be applied to police officers. In *Trujillo v. Rio Arriba Cty. ex rel. Rio Arriba Cty. Sheriff's Dep't*, 319 F.R.D. 571, 615 (D.N.M. 2016) the court held that, "The essence of [the reasonable accommodation during arrest] theory is that once the police have a situation under control, the police have a duty to accommodate a disability." Citing *Glover v. City of Wilmington*, 966 F.Supp.2d 417, 429 (D. Del. 2013).

Officers cannot and should not be required to guess what is best for a mentally ill person, especially while a situation may still be unfolding. It is without dispute that Zachary Bear Heels at no time requested an accommodation, reasonable or not. The undisputed facts show that he was largely incoherent during the period of time the Omaha police had contact with him. (Complaint, Doc. #1, ¶¶ 10, 20). At no time did decedent request an accommodation and Defendants had no basis for effectuating any accommodation. This cause of action should be dismissed as a matter of law.

## IV.

## FOURTEENTH AMENDMENT FAILURE TO

## RENDER MEDICAL AID.

Plaintiff's Third and Seventh Causes of Action allege that the officers and the City failed to render medical aid. As an arrestee, Plaintiff's claims that Mr. Bear Heels was denied medical care arise under the Fourteenth Amendment, but the Eighth Circuit has held that the Eighth Amendment's deliberate indifference standard applied to the claims of arrestees. *Thompson v. King,* 730 F.3d 742, 746 (8th Cir. 2013); *Carpenter v. Gage,* 686 F.3d 644, 650 (8th Cir. 2012). There are two components to a claim whether officials were deliberately indifferent to the medical needs of arrestees. *Coleman v. Ranija,* 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff generally must show that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need, but subjectively, was deliberately indifferent to it. *Grayson v. Ross,* 454 F.3d 802, 808-09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minnesota Dept. of Corr.,* 512 F.3d 478, 481 (8the Cir. 2008); quoting *Coleman,* 114 F.3d at 784.

In this case, it appears Plaintiff alleges two instances of failure to provide medical attention. First, Plaintiff alleges the officers failed to respond to his serious medical need regarding his psychotic episode. (Complaint, Doc. #1, ¶ 81). And secondly, Plaintiff alleges the officers failed to administer emergency first aid or obtain emergency medical care after he had been hit and tased. (Complaint, Doc. #1, ¶ 83). Plaintiffs fail to state a cause of action under either theory.

### A. Failure to obtain medical care for mental health

First and foremost, it is not a criminal offense to be mentally ill in public. This is why Mr. Bear Heels was not arrested. As the Plaintiff understands because it is cited in her

Complaint, the police cannot take a person into involuntary custody unless they present a substantial risk of serious harm to themselves or others which must be evidenced by overt acts. See Neb. Rev. Stat. § 71-908. (Complaint, Doc. #1, ¶ 18). The undisputed facts as recited by Plaintiff indicate that, up until the point in time when the officers attempted to put the seatbelt on Plaintiff and he ran out of the backseat of the police cruiser, he was basically cooperative. He was not violent; he did not present any indicate that he was a threat to himself or others. He was placed into handcuffs without incident (Complaint, Doc. #1, ¶11). He sat in the back of a police cruiser for 36 minutes without any problems. (Complaint, Doc. #1, ¶ 14)

Assuming all these facts to be true, as we must in a Motion to Dismiss, there are no facts pled that indicate the decedent was suffering from an objectively serious medical need for which the officers needed to obtain medical care. As for the second element of the legal test as set forth above, "in order to demonstrate that a defendant actually know of , but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness, disregarding a known risk to the inmate's health." *Thomson,* 730 F.3d at 746-47 (citation omitted)." This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" *Id.* (quotations and citations omitted.) Again, the Plaintiff admits that Officers Strudl and Mead talked to Plaintiff, talked to their supervisor and discussed the possibility of committing decedent, but he wasn't displaying any of the requisite behaviors that would allow for an involuntary committal. As pled, there were no objective indicators that the decedent was in need of emergency mental health care at that time.

  **B. Failure to render medical treatment after encounters with the officers**

The undisputed evidence as pled by the Plaintiff indicates that officers called for a medical squad as soon as it was apparent one was needed and that occurred at 1:42 a.m. (Complaint, Doc. #1, ¶ 44). There is no dispute the decedent was subjected to a TASER multiple times. However, the TASER apparently did not have the effect of incapacitating Plaintiff because at 1:40 a.m. he "pulled his left hand out of the handcuffs and turned toward Ryan McClarty. Bear Heels swung his arms and kicked his legs at Ryan McClarty while he was still on the ground." (Complaint, Doc. #1, ¶ 41). Thereafter, Officer McClarty used closed fist strikes on him. Again, the rescue squad was called at 1:42 a.m. This evidence does not show a reckless disregard by the officers to render medical aid.

Based upon Plaintiff's apparent allegation that the officers failed to personally provide the decedent medical treatment is not required as a matter of law. In *City of Revere v. Mass. Gen. Hospital,* 463 U.S. 239, 245 (1983), the U.S. Supreme Court held that in the context of an alleged deprivation of medical care, the government defendant has "fulfilled its constitutional obligation by seeing that [the injured party] was taken promptly to a hospital that provided treatment necessary for his injury."

Similarly, in *Maddox v. City of Los Angeles,* 792 F.2d 1408, 1415 (9th Cir. 1986), the Ninth Circuit held it was not a constitutional violation for the defendant officers to fail to personally render cardiopulmonary resuscitation to the decedent in a situation where they took him to the hospital.

And in *Tagstrom v. Enockson*, 857 F.2d 502, 503-04 (8th Cir. 1988), the Eighth Circuit held that the officer properly performed his duty by immediately calling an ambulance for a fleeing suspect who was injured after he crashed his vehicle during a police pursuit. The Court

9

specifically ruled that the officer did not have "an affirmative duty to render medical assistance himself, such as giving mouth-to-mouth resuscitation or CPR." *Id.* at 504.

Again, the Complaint alleges that the officer summoned medical assistance at 1:42 a.m. Two minutes earlier, Bear Heels was lashing out at the officers. The squad arrived at 1:49 a.m.. There is no evidence to support the contention that officers delayed in calling a squad.

Moreover, the officers' duty under the 8th and 14th amendments is satisfied by promptly calling an ambulance. They had no duty to personally provide medical assistance and therefore they could not have been deliberately indifferent to decedent's serious medical needs as a matter of law.

## V.

## SOVEREIGN IMMUNITY

It is not entirely clear if Plaintiff is asserting any state law claims or claims of negligence; however, Plaintiff does state that she "brings this action both as a survival action on behalf of Bear Heels' estate and as a wrongful death action on behalf of Bear Heels next of kin as authorized by Nebraska law. Neb. Rev. Stat. Ann. § 25-1401; Neb. Rev. Stat. Ann. § 30-809; Neb. Rev. Stat. Ann. §30 -81-; *Corona de Camargo V. Schon,* 278 Neb. 1045, 1047, 776 N.W.2d 1, 5 2009). (Complaint, Doc. #1, ¶ 2). To the extent that Plaintiff is seeking recovery under any theory of state law, Defendants show the court that they are immune from suit under the theory of sovereign immunity.

The Nebraska Political Subdivisions Tort Claims Act ("Tort Claims Act"), Neb. Rev. Stat. §§ 13-901 *et seq*., provides the sole vehicle through which the City or its employees can be sued in tort under state law. The Tort Claims Act defines a "tort claim" as: "any claim against a

political subdivision for money … on account of personal injury or death, caused by the negligent or *wrongful act* or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment, under circumstances in which the political subdivision, if a private person, would be liable to the claimant for such damage, loss, injury, or death . . .". Neb. Rev. Stat. §13-903(4)(Emphasis added). The derivation of the claim or right to sue on that negligent or wrongful act, whether in common law, in statutes, or in the constitution, is not significant. The Plaintiff in this case is claiming monetary damages on account of an alleged wrongful act of City employees while those employees were acting within the scope of his/her employment as certified law enforcement officer for the City of Omaha. As a result, this action is to be analyzed under the rules and standards imposed by the Tort Claims Act.

The Tort Claims Act sets out a comprehensive procedure whereby the traditional concept of governmental immunity is partially abrogated. The Act does not, however, expose cities or their employees to liability for all acts that cause injury. When the Legislature adopted the Tort Claims Act, it expressed a public policy that liability would be limited. In Neb. Rev. Stat. §13-902, the Legislature expressly declared it to be the public policy of the State that "no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim *except to the extent, and only to the extent*, provided by the Political Subdivisions Tort Claims Act." (Emphasis added). The Nebraska Supreme Court has repeatedly held that the provisions of the Tort Claims Act are to be construed in favor of the political subdivision and against the waiver of sovereign immunity. *McKenna v. Julian*, 277 Neb. 522, 528, 763 N.W.2d 384, 390 (Neb. 2009). Therefore, if suit is not allowed by the Act, suit is not allowed at all.

Although the Tort Claims Act partially abrogated sovereign immunity and proscribed a procedure for the maintenance of a suit against a political subdivision, it "also provides a list of

claims for which sovereign immunity is not waived." *Id*. at 527. These exceptions include what is commonly referred to as the intentional torts exception, which provides that the Tort Claims Act shall not permit suit for:

> "(7) Any claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights . . ."

Neb. Rev. Stat. § 13-910(7). Nebraska and federal courts have long held that political subdivisions are immune from liability arising under the intentional torts listed in that subparagraph,and no suit may be maintained against a municipality or its employees for the causes of action listed there. See *Johnson v. State,* 700 N.W.2d 620, 625 (Neb. 2005); *McKenna* at 530-31; *Britton v. City of Crawford*, 282 Neb. 374, 381-386, 803 N.W.2d 508, 514-518 (Neb. 2011); *Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir.1990).

Importantly, the Tort Claims Act does not just bar claims of assault, battery, and other intentional torts from being asserted against Nebraska political subdivisions, it bars any claim *arising out of* the intentional torts listed in Neb. Rev. Stat. § 13-910(7).

The Nebraska Supreme Court has defined the intentional tort of battery as "'an actual infliction' of an uncontested injury upon or unconsented contact with another." *Britton* at 382, quoting *Bergman v. Anderson*, 226 Neb. 333, 336, 411 N.W.2d 336, 339 (Neb. 1987). It has also recognized battery as "any intentional, unlawful physical violence of contact inflicted on a human being without his consent," (*Britton* at 382, quoting *State v. Washington*, 232 Neb. 838, 839, 442 N.W.2d 395, 396 (Neb. 1989)), and has recognized and referred to the definition of battery contained in the Restatement (Second) of Torts:

> An actor is subject to liability to another for battery if:

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) a harmful contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 13 at 25 (1965); *Britton* at 382.

When applying the elements of the intentional tort of battery to the Plaintiff's claims, it is clear that a battery occurred. The Restatement (Second) of Torts defines a battery as:

An actor [the police officer or the City] is subject to liability to another [Bear Heels] for battery if:

(a) he [the police officer] acts intending to cause a harmful or offensive contact with the person of the other [Bear Heels] or a third person, or an imminent apprehension of such a contact, and
(b) a harmful contact with the person of the other [Bear Heels] directly or indirectly results.

Restatement (Second) of Torts § 13 at 25 (1965); *Britton* at 382. Under the undisputed facts of this case, all of the elements of a battery have been met. Officers Payne or McClarty intended to cause a harmful or offensive contact with Mr. Bear Heels (by intentionally striking him or using his TASER) and a harmful contact with Mr. Bear Heels directly occurred.

Any state law claims arise out of the intentional tort of battery and are barred by the Political Subdivisions Tort Claims Act. Sovereign immunity also bars any state based constitutional and civil rights claims, to the extent such has been pled. See *McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384 (Neb. 2009). The Nebraska Supreme Court held that Neb. Const. Art. I § 3 did not contain any language expressly waiving sovereign immunity and that the Plaintiff's claims for excessive false arrest, unconstitutional seizure, excessive force, and oppression under color of officer were subject to the Nebraska Political Subdivisions Tort Claims Act. As such, the Nebraska Supreme Court held that they were claims which arose out of

13

false arrest and battery and dismissed the Plaintiff's claims as they were barred by sovereign immunity. *Id.*

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court dismiss the causes of action and defendants as set forth herein because Plaintiff has failed to state a claim upon which this Court has the power to grant relief.

Respectfully submitted this 4th day of October, 2018.

                                                THE CITY OF OMAHA, et al., Defendants.

                                                By: s/ Michelle Peters
                                                   MICHELLE PETERS, No. 20021
                                                   Deputy City Attorney
                                                   RYAN J. WIESEN, No. 24810
                                                   Assistant City Attorney
                                                   Omaha/Douglas Civic Center
                                                   1819 Farnam Street, Suite 804
                                                   Omaha, Nebraska 68183
                                                   Telephone: (402) 444-5115
                                                   Fax: (402) 444-5125
                                                   Michelle.Peters@cityofomaha.org
                                                   Ryan.Wiesen@cityofomaha.org
                                                   Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2018, I electronically filed the foregoing **BRIEF IN SUPPORT OF THE CITY DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record in the above captioned case registered with the system.

                                                             s/ Michelle Peters